[No. D002039. Fourth Dist., Div. One. July 10, 1986.]

In re the Marriage of SANDRA R. and JACK SLIVKA.
JACK SLIVKA, Respondent, v.
SANDRA R. SLIVKA, Appellant.

## COUNSEL

Richard J. Annis and Annis & Goldman for Appellant.

Steven L. Victor, Rudick, Platt & Victor and Anthony T. Ditty for Respondent.

OPINION

**LEWIS, J.**—Sandra R. Slivka appeals the interlocutory judgment of dissolution of her marriage to Jack Slivka. She contends the trial court erred in not dividing the community interest in the value of Jack's medical partnership interest. Sandra also contends the community is entitled to reimbursement for contributions toward Jack's education and training.

FACTS

The parties were married in Cleveland on June 29, 1969. Sandra worked as a research technician and in 1971 took a new job as a research biochemist at the Veterans Administration Hospital. Jack attended medical school from 1969 to 1973 and worked only during the summer. After graduation in 1973, Jack served a one-year internship and his first-year residency in internal medicine at Cleveland University Hospital. Sandra left work in April 1974 before the birth of their first child. The following year the parties moved to California where Jack served a three-year residency in radiology at the University of California at San Diego. He began employment with Kaiser Permanente in 1978 as a radiologist. He became a class three partner in Southern California Permanente Group (SCAPE) in 1980.

Sandra and Jack separated initially on October 5, 1982. After failed attempts at reconciliation, they parted again in December 1982. Jack filed the petition for dissolution on October 7, 1982.

At trial, Sandra attempted to introduce evidence to establish the value of Jack's medical degree and license. The court sustained the objection to the evidence. Sandra thus introduced no evidence of the cost of the medical education. The only testimony on the matter was elicited on cross-examination of Sandra:

"Q. [T]he tuition for medical school, that was paid by Dr. Slivka's father; is that right?

"A. He helped us, yes."

Sandra did introduce expert testimony to establish the value of the goodwill of Jack's partnership interest in SCAPE. However, the court found, inter alia, that "Petitioner's [Jack's] interest in the partnership with Kaiser Permanente has no value, and awards it to Petitioner as his sole and separate property."

The court entered the interlocutory judgment of dissolution of marriage on June 15, 1984, and the final judgment on June 25.

Sandra filed a timely notice of appeal.

I

Sandra challenges the court's finding of no value in Jack's partnership interest in SCAPE and a fortiori no goodwill value. The question on review is whether the finding is supported by substantial evidence. We conclude it is.

The existence of goodwill is a question of fact. There are no rigid rules for determining its value, but each case must be determined on its own facts and circumstances. (*Mueller* v. *Mueller* (1956) 144 Cal.App.2d 245, 251, 252 [301 P.2d 90]; *In re Marriage of Asbury* (1983) 144 Cal.App.3d 918, 923 [193 Cal.Rptr. 562].) "'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' [Citations.]

"'It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact.' [Citations.] [Wife's] contention herein 'requires [her] to demonstrate that there is *no* substantial evidence to support the challenged findings.' (Italics added.) [Citations.]" (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

Additionally, all factual matters are to be viewed most favorably to the prevailing party and in support of the judgment; all issues of credibility are for the trier of fact. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920,

925 [101 Cal.Rptr. 568, 496 P.2d 480].) "'The testimony of a witness, even the party himself, may be sufficient' [to support a judgment]." (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479], quoting 6 Witkin, Cal. Procedure (2d ed. 1971) § 248, p. 4240.) All conflicts must be resolved in favor of the respondent and all reasonable inferences indulged in to uphold the judgment. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].)

■ At trial, the judge concluded: "As to the alleged good will, which was presented to the Court through the expert's testimony, I find that that is utter speculation, that there is any such thing as good will or that it has any demonstrable value, given the nature of the husband's association with the Permanent [*sic*] Group. Accordingly, I find that there is no such asset."

In the interlocutory judgment of dissolution, the court found Jack's interest in the partnership to have no value and awarded it to Jack as his sole and separate property.

At trial, Sandra had the burden of proof to establish the existence and value of Jack's partnership interest, a question which developed into one of establishing the existence and value of the goodwill of the practice. Her expert witness testified to use of the capitalization of excess earnings method to value the goodwill at $27,238. Oversimplified, the argument was that Jack earns in excess of the value of his services, therefore goodwill exists as part of his partnership interest.

At trial, Sandra did not carry her burden of proof. On this appeal, she also fails to demonstrate a total lack of substantial evidence to support the court's finding of no value.

Jack's partnership interest is part of a two-tiered structure. Jack is a class three partner in SCAPE, a medical group partnership. The Kaiser Foundation Health Plan, Inc., a health maintenance organization, contracts with this medical group and others to perform medical services. Jack testified he made no capital contribution to the medical group on becoming a partner and has no assets to take with him on withdrawal from the partnership. He will receive no payment on his departure and cannot sell his partnership interest.

The medical group's only practice is via contract with Kaiser. There is no other patient base; the partners are prohibited from earning outside income. Jack sees only those patients who utilize the Kaiser services. His

compensation is from the medical group for the work done at Kaiser. It consists of a base salary, extra pay for extra hours, incentive earnings which are yearend bonuses and yearend accruals. Vis-à-vis the Kaiser network, his situation is most similar to an employee who has no ownership interest and is paid for services rendered.

Viewing the facts in the light most favorable to Jack and in support of the judgment, leaving questions of credibility to the discretion of the trial court, and resolving all conflicts in favor of Jack, as we must, we find all of the above constitutes substantial evidence sufficient to support the court's findings.

## II

Sandra also claims the benefit of application of recently enacted Civil Code[1] section 4800.3. That section provides for community reimbursement for contributions to education or training.[2] This court requested

---

[1] All statutory references are to the Civil Code unless otherwise specified.

[2] The section provides: "(a) As used in this section, 'community contributions to education or training' means payments made with community property for education or training or for the repayment of a loan incurred for education or training.

"(b) Subject to the limitations provided in this section, upon dissolution of marriage or legal separation:

"(1) The community shall be reimbursed for community contributions to education or training of a party that substantially enhances the earning capacity of the party. The amount reimbursed shall be with interest at the legal rate, accruing from the end of the calendar year in which the contributions were made.

"(2) A loan incurred during marriage for the education or training of a party shall not be included among the liabilities of the community for the purpose of division pursuant to Section 4800 but shall be assigned for payment by the party.

"(c) The reimbursement and assignment required by this section shall be reduced or modified to the extent circumstances render such a disposition unjust, including but not limited to any of the following:

"(1) The community has substantially benefited from the education, training, or loan incurred for the education or training of the party. There is a rebuttable presumption, affecting the burden of proof, that the community has not substantially benefited from community contributions to the education or training made less than 10 years before the commencement of the proceeding, and that the community has substantially benefited from community contributions to the education or training made more than 10 years before the commencement of the proceeding.

"(2) The education or training received by the party is offset by the education or training received by the other party for which community contributions have been made.

"(3) The education or training enables the party receiving the education or training to engage in gainful employment that substantially reduces the need of the party for support that would otherwise be required.

"(d) Reimbursement for community contributions and assignment of loans pursuant to this section is the exclusive remedy of the community or a party for the education or training and any resulting enhancement of the earning capacity of a party. However, nothing in this subdivision shall limit consideration of the effect of the education, training, or enhancement, or the amount reimbursed pursuant to this section, on the circumstances of the parties for the purpose of an order for support pursuant to Section 4801.

"(e) This section is subject to an express written agreement of the parties to the contrary."

supplemental briefing on the issue of the constitutionality of retroactive application of the section to the present case.[3]

For the reasons stated below, we conclude the section can be applied constitutionally to the present case.

We begin by noting that the decision of the Supreme Court in *In re Marriage of Sullivan* (1984) 37 Cal.3d 762 [209 Cal.Rptr. 354, 691 P.2d 1020], is the first published opinion dealing with the applicability of the section. In *Sullivan,* the section took effect while the case was pending before the Supreme Court, and the court remanded the matter for application of the section with no discussion of the constitutionality of its retroactive application. (*Id.,* at pp. 768, 770.)

We are guided by the Supreme Court's constitutionality analyses in *In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354] [constitutionality of retroactive application of Civ. Code, § 4800.1], and *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253] [constitutionality of retroactive application of § 4800.2]. In both cases, the court found the state interest in equitable division of marital property and equitable dissolution of the marital partnership insufficient to justify *retroactive* application of the statutes.[4] The deciding factor was the absence of a "rank injustice" in the former law which would be cured by retroactive application of the new sections. (*Buol, supra,* 39 Cal.3d at p. 761; *Fabian, supra,* 41 Cal.3d at p. 449.) The court concluded the statutes as applied impaired vested property rights without due process of law. (*Buol, supra,* at p. 763; *Fabian, supra,* at p. 451.)

The *Buol* court examined a situation in which the law prior to the enactment of section 4800.1 permitted a spouse to establish a joint tenancy asset as separate property via an oral agreement. The new section established a presumption joint tenancy property is community property, rebuttable only by a writing. The court found retroactive application of the writing requirement did not advance the goal of equitable division of community property where the asset was the separate property of one spouse. (*Buol, supra,* 39 Cal.3d 751, 762.) Retroactivity only served to destroy the spouse's "legitimate separate property expectations" (*id.,* at p. 764) established by the oral agreement. The prior law was not unfair.

---

[3]The section took effect on January 1, 1985. (Stats. 1984, ch. 1661, § 4.) The Legislature expressed its intent for the section to apply to all cases not yet final on, and those cases filed after, the effective date. Sandra appealed the interlocutory judgment of dissolution of the marriage on August 6, 1984.

[4]As with section 4800.3, the Legislature expressed its intent for the sections to apply to all cases not yet final on, and those cases filed after, the effective date. (See Stats. 1983, ch. 342, § 4 [§§ 4800.1, 4800.2].)

Section 4800.2 changed relevant former law by providing for reimbursement, absent a written waiver, for separate property contributions to the acquisition of community property. The *Fabian* court explained that prior to the adoption of section 4800.2, the spouse contributing separate property to the acquisition of community property could preserve the separate property character of the contribution by agreement. "Absent such an understanding, it could reasonably be assumed that by investing in a community asset, the contributing spouse intended to bestow a permanent benefit on the community. In leaving the agreement option open to the contributing spouse, prior law was not inherently inequitable or unfair." (*Fabian, supra,* 41 Cal.3d 440, 449.)

In contrast to the state of the law involved in *Buol* and *Fabian,* the law prior to the enactment of section 4800.3 can be viewed as unfair and as preserving an injustice. The section takes steps to cure this inequity. This leads us to conclude retroactive application of the section advances the goal of equitable division of community property and is constitutionally valid.

The question of the existence of a divisible community property interest in a spouse's professional education or degree has been discussed to date in three main cases: *Franklin* v. *Franklin* (1945) 67 Cal.App.2d 717 [155 P.2d 637]; *Todd* v. *Todd* (1969) 272 Cal.App.2d 786 [78 Cal.Rptr. 131]; *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446 [152 Cal.Rptr. 668], overruled on another point in *In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal.Rptr. 853, 614 P.2d 285].) The *Aufmuth* court relied on these two earlier cases to conclude the professional education is not community property subject to valuation and division. (89 Cal.App.3d at p. 461.) The court also noted that the value of a professional education lies in potential increased earning capacity but declined to characterize that as community property. (*Ibid.*)

However, because the community lays claim to the fruits of the efforts of the spouses during marriage, earnings from the spouse's professional practice redounded to the community.[5] (See *In re Marriage of Shea* (1980) 111 Cal.App.3d 713, 717 [169 Cal.Rptr. 490]; *In re Marriage of Hillerman* (1980) 109 Cal.App.3d 334, 338 [167 Cal.Rptr. 240].) In this way, the community benefited from its efforts expended in acquiring the education. Nevertheless, in marriages in which dissolution closely followed a spouse's

---

[5]The *Aufmuth* court cited *Todd* in stating that to the extent community assets were the product of the husband's education, the wife realized their value in the award of those assets to her. (*Aufmuth, supra,* 89 Cal.App.3d 446, 461.) However, when the *Todd* court awarded *unequal* division of community property to the parties, the current statutory requirement of equal division was not in effect. (*Todd, supra,* 272 Cal.App.2d 786, 791; § 4800, subd. (a) [added Stats. 1969, ch. 1608, § 8, p. 3333, operative Jan. 1, 1970].)

graduation, or, as in this case, the spouse's postgraduate training, the community lacked this opportunity to benefit from its efforts. In addition, prior to the enactment of section 4800.3, there was no statutory or judicially created right of the community to reimbursement for expenditures made in acquisition of the education.[6] This meant the community in these situations lost all benefit from its efforts.

As a result of this treatment of the professional education under the prior law, the quantum of the community's property was decreased, and the nonstudent working spouse's community property interest suffered when the marriage was dissolved shortly after completion of the education or training. This inequity resulted after the working spouse supported the community and the student spouse during the acquisition of the professional education. The parties left the marriage with unequal shares of the fruit of community effort. The injustice of this scheme is evident in that the student spouse acquires an increased opportunity for higher earnings and fulfillment from which the other spouse may derive no benefit.

Section 4800.3 remedies this injustice and serves the state interest in equitable dissolution of the marital partnership by providing for reimbursement to the community for expenditures made in acquisition of the student spouse's education or training.

Moreover, the section accounts for the benefit to the community of the professional spouse's increased earnings by treating long-term and short-term marriages differently. As the inequity of nonreimbursement is least apparent in long-term marriages, the statute establishes a rebuttable presumption of substantial benefit to the community from community contributions to education made more than 10 years before commencement of the dissolution proceedings. (See § 4800.3, subd. (c)(1).) The opposite applies to short-term marriages; the statute establishes a rebuttable presumption that the community has *not* substantially benefited from community contributions to education made *less than* 10 years before commencement of dissolution proceedings. (*Ibid.*) The section also additionally provides for reduction or modification of reimbursement under other circumstances. (See § 4800.3, subds. (c)(2), (c)(3).)

We conclude retroactive application of section 4800.3 cures an injustice in the former law and advances the state interest in equitable division of community property in the dissolution of the marital partnership. The im-

---

[6]As the new section imposes a reimbursement requirement on the degree-earning spouse which was not present under the former law, its retroactive application impairs that spouse's vested property rights.

pairment of Jack's vested property rights by retroactive application of the section, therefore, is not constitutionally prohibited. Sandra is entitled to application of the section.

We reverse the judgment and remand the cause for application of section 4800.3.

Work, Acting P. J., and Mitchell, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.