[No. D038788. Fourth Dist. Div. One. Jan. 10, 2003.]

In re the Marriage of MICHAEL SCOTT and KELLY ANN DELANEY WEINER.
MICHAEL SCOTT WEINER, Appellant, v.
KELLY ANN DELANEY WEINER, Respondent.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Discussion parts II and III.

236

## COUNSEL

William M. Henrich for Appellant.

Richard C. Wildman for Respondent.

## OPINION

**BENKE, J.,**—The principal issue in this case concerns interpretation of Family Code[2] section 2641, which dictates the conditions under which a spouse must reimburse the marital community for educational loan payments made from community resources. In general, under section 2641, subdivision (b)(1), a spouse must reimburse the community for educational expenses which were paid by the community and which substantially enhanced the spouse's earning capacity. However, under section 2641, subdivision (c)(1), any reimbursement to the community must be reduced to the extent the benefit the community received from the education makes full reimbursement unjust.

Contrary to the finding of the trial court, section 2641 does govern instances, such as this one, where a spouse's education took place before marriage and community funds were used during the marriage to repay the spouse's educational loans. Accordingly, we must reverse the trial court's order requiring complete reimbursement of funds the community used to repay appellant Michael Scott Weiner's (Michael) premarital medical school loans and remand for consideration of both how Michael's medical education enhanced his earning capacity and how it benefited the marital community.

### SUMMARY

Michael graduated from medical school in 1991. Two years later, in 1993, Michael and respondent Kelly Ann Delaney Weiner (Kelly) were married. Michael and Kelly separated in October 1999. They had no children.

During the marriage Michael and Kelly paid a total of $12,217.14 on loans Michael had incurred while in medical school.

In calendar year 2000 Michael received bonus checks from the United States Navy, in which he served as an officer and medical doctor. One of the bonus checks was an annual bonus all Navy doctors receive. The other bonus

---

[2]All further statutory references are to the Family Code unless otherwise indicated.

check was paid because, shortly after the couple separated, Michael became board certified in internal medicine. Michael gave Kelly one-half of each bonus check, or a total of $9,600.[3] In addition to the bonuses, following their separation Michael paid Kelly temporary spousal support of $1,750 a month.

Following their separation, Kelly paid $3,285 in debts incurred by the community.

The parties disputed disposition of the educational loan payments and the bonus checks and those matters were resolved at trial. The trial court found Michael was required to reimburse Kelly for one-half of the medical school loan payments made during marriage, or $6,608.47. The family law court expressly declined to consider whether the community had benefited from Michael's medical education, because in the court's view section 2641 does not govern premarital educational loans. The court found that the bonus checks Michael received in 2000 were because of skills obtained during marriage and therefore Michael was not entitled to any credit for those portions of the bonuses he had paid to Kelly.

Although not previously claimed by Kelly, the trial court also awarded Kelly *Epstein*[4] credits for the postseparation debts she paid.

Following entry of judgment in Kelly's favor on these issues, Michael filed a timely notice of appeal.

DISCUSSION

I

Section 2641, subdivision (a), states: " 'Community contributions to education or training' as used in this section means payments made with community or quasi-community property for education or training or for the repayment of a loan incurred for education or training, whether the payments were made while the parties were resident in this state or resident outside this state."

Section 2641, subdivision (b) (1), in turn provides the general rule that "[t]he community shall be reimbursed for community contributions to education or training of a party that substantially enhances the earning capacity of the party."

---

[3]The gross amount of the checks was $28,000; the net amount Michael received was $19,200.

[4]See *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84-85 [154 Cal.Rptr. 413, 592 P.2d 1165].

Section 2641, subdivision (c), then provides the exception to the general rule which Michael relies upon: "The reimbursement and assignment required by this section shall be reduced or modified to the extent circumstances render such a disposition unjust, including, but not limited to, any of the following:

"(1) The community has substantially benefited from the education, training, or loan incurred for the education or training of the party. There is a rebuttable presumption, affecting the burden of proof, that the community has not substantially benefited from community contributions to the education or training made less than 10 years before the commencement of the proceeding, and that the community has substantially benefited from community contributions to the education or training made more than 10 years before the commencement of the proceeding."

Importantly, section 2641, subdivision (d), provides: "Reimbursement for community contributions and assignment of loans pursuant to this section is the exclusive remedy of the community or a party for the education or training and any resulting enhancement of the earning capacity of a party."

Of some significance as well is section 2627, which provides in pertinent part: "Notwithstanding Sections 2550 to 2552, inclusive, and Sections 2620 to 2624, inclusive, *educational loans* shall be assigned pursuant to Section 2641." (Italics added.) Sections 2550 to 2552 provide general rules for the division of community property and sections 2620 to 2624 provide rules for the division of debts and liabilities.

In interpreting section 2641, we are governed by familiar principles. "Under general settled canons of statutory construction, we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their 'usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is unambiguous, no court need, or should, go beyond that pure expression of legislative intent.'" (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572 [88 Cal.Rptr.2d 19, 981 P.2d 944].)

Here, there is nothing on the face of section 2641 which limits its application to education or training which was received during marriage. Rather, by its terms application of the statute is governed solely by whether community funds were used to pay for the education, even if the education took place before marriage. This broad interpretation of section 2641 is of course also consistent with the language of section 2627 which, without

limitation, requires that educational loans be assigned under the provisions of section 2641.

Our conclusion the statute was intended to cover all educational costs paid with community funds, even when, as here, the education occurred before marriage, is consistent with the history and intent of the statute. Before enactment of former Civil Code section 4800.3, the predecessor to section 2641, spouses had no means of directly recouping the cost or value of one spouse's education and training, even though the community may have contributed considerable financial support to the education or training. (See *In re Marriage of Slivka* (1986) 183 Cal.App.3d 159, 166-167 [228 Cal.Rptr. 76]; see also *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 766-767 [209 Cal.Rptr. 354, 691 P.2d 1020].) Under case law existing at the time Civil Code section 4800.3 was adopted, a spouse's professional education was not a community asset and "there was no statutory or judicially created right of the community to reimbursement for expenditures made in acquisition of the education." (*In re Marriage of Slivka, supra*, 183 Cal.App.3d at p. 167, fn. omitted.) As we stated in *In re Marriage of Slivka*, "As a result of this treatment of the professional education under the prior law, the quantum of the community's property was decreased, and the nonstudent working spouse's community property interest suffered when the marriage was dissolved shortly after completion of the education or training. This inequity resulted after the working spouse supported the community and the student spouse during the acquisition of the professional education. The parties left the marriage with unequal shares of the fruit of community effort. The injustice of this scheme is evident in that the student spouse acquires an increased opportunity for higher earnings and fulfillment from which the other spouse may derive no benefit.

"Section 4800.3 remedies this injustice and serves the state interest in equitable dissolution of the marital partnership by providing for reimbursement to the community for expenditures made in acquisition of the student spouse's education or training." (*In re Marriage of Slivka, supra,* 183 Cal.App.3d at p. 167.)

The potential inequity the statute was designed to remedy arises even if the education itself occurred long before the marriage. The trained spouse can expect a continuing benefit from his or her education whereas, following dissolution, the other member of the community will receive no future benefit from the community's payment of the prior educational expenses. Thus treating educational expenses paid by the community, whenever they

were incurred, in a similar fashion, is not only consistent with the express language of the statute but also with its larger goals.[5]

Here, Michael presented evidence his medical education provided him with monthly allotments which rose to $1,000 a month and annual bonuses of $15,000, neither of which would have been paid to him by the Navy if he had not been a doctor. Given that evidence, Michael was entitled to a determination by the trial court as to whether he had overcome the presumption set forth in section 2641, subdivision (c)(1), that the community had not substantially benefited from his medical school education. If on remand such a benefit is found, the trial court must then determine under section 2641, subdivision (c), whether it is just to require that he reimburse the community for all of its educational loan payments.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed and remanded for further proceedings consistent with the views we have expressed. Appellant to recover his costs.

Kremer, P. J., and McIntyre, J., concurred.

---

[5]We note that the equitable factors which Kelly seeks to avoid—i.e., the benefit the community received from the education—might apply even if the statute had never been enacted. While a community which has paid the separate debts of one spouse is entitled to compensation, the amount it receives is subject to equitable adjustment. (See, e.g., *Weinberg v. Weinberg* (1967) 67 Cal.2d 557, 564-565 [63 Cal.Rptr. 13, 432 P.2d 709].) Thus even outside the scheme set forth in section 2641, as a matter of equity the debtor on an educational loan might be entitled to a determination as to how much the community benefited from a professional education.

*See footnote 1, *ante,* page 235.