Filed 1/16/14  Marriage of Gray CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of CHRISTINE E. GRAY and ROBERT GRAY | |
| CHRISTINE E. GRAY,<br><br>        Appellant,<br><br>v.<br><br>ROBERT GRAY,<br><br>        Respondent. | A135328<br><br>(Alameda County<br>  Super. Ct. No. AF11603446) |
| ROBERT GRAY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHRISTINE E. GRAY,<br><br>        Defendant and Appellant. | A135480<br><br>(Alameda County<br>  Super. Ct. No. AF12612795) |

Appellant Christine E. Gray (mother) appeals from orders issued by family court Commissioner Thomas Nixon, which resolved the separate applications of mother and Robert Gray (father) for permanent restraining orders under the Domestic Violence Prevention Act (DVPA; Fam. Code, § 6200, et seq.[1]).  Mother argues the commissioner erred in denying her request for a permanent restraining order and granting father's request for a permanent restraining order.  Father has moved to dismiss the appeals on the

---

[1]     All further unspecified statutory references are to the Family Code.

ground of mootness, and alternatively, argues there is no substantive merit to mother's appeals. We conclude the merits of mother's appeals challenging the orders regarding the parents' permanent restraining orders are properly before us. Nevertheless, mother's arguments do not require reversal of those orders. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On January 18, 2012, mother and father filed separate applications for permanent DVPA restraining orders on behalf of themselves and the parties' two teenaged children (then 12 and 14 years) against the other parent. In orders dated January 19, 2012, and filed by the court clerk on January 20, 2012, the court (Judge Ioana Petrou) granted each parent a temporary restraining order against the other parent until January 31, 2012, and issued orders to show cause scheduling an evidentiary hearing on January 31, 2012, to resolve both parents' requests for permanent restraining orders.[3]

On January 31, 2012, and continuing on February 2, 6, 8, and 16, 2012, Commissioner Nixon presided at an evidentiary hearing on both parents' requests for permanent restraining orders. The commissioner repeatedly stated his decision would be based solely on the testimony and exhibits that were admitted into evidence at the hearing; he would not consider documents filed in support of or since the issuance of the

---

[2]     We set forth only those facts that are necessary to resolve mother's appellate issues. Father filed a motion to augment the record to include certain documents that were filed in the superior court and not included in the clerk's transcripts. We now grant the motion to augment the record and have considered the documents only to the extent they are necessary to resolve mother's appellate issues.

[3]     Father's DVPA petition was filed using the case number assigned for mother's pending action for dissolution of the marriage. After Judge Petrou issued her temporary orders, the DVPA order in favor of mother was filed in the case assigned to her dissolution action (AF11603446) and the DVPA order in favor of father was filed in a case assigned a new number (AF12612795). Because father was in default in mother's dissolution action at the time he filed his DVPA petition, mother argued father could not seek DVPA relief. However, both Judge Petrou and later Commissioner Nixon correctly ruled that father's error in initially filing his DVPA petition using the case number for mother's dissolution action did not prevent father from pursuing his request for DVPA relief. (See *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 335 [DVPA application "may properly be considered an independent 'lawsuit' "].)

2

temporary orders.[4]  The commissioner heard testimony from mother, father, mother's mother, and Piedmont Police Department Sergeant Catherine Carr.  Mother claimed she was entitled to a permanent restraining order "because:  (1) Father and the Parties' therapist attempted to abduct Mother, (2) Father verbally insults Mother in front of the children, and (3) Father gets too close to Mother's face during arguments."  Father claimed he was entitled to a permanent restraining order "because:  (1) Mother is currently unfit to care for her children as her substance abuse results in verbal abuse in the presence of the minor children; ([2]) while under the influence [of alcohol], Mother has repeatedly berated, disrupted the peace of and verbally threatened Father, including making threats to physically harm him, and ([3]) in the absence of protective orders, the abuse will continue to occur because of Mother's addi[c]tion[]."

After closing arguments on February 16, 2012, the commissioner denied mother's request for a permanent restraining order and granted father's request for a permanent restraining order.  The commissioner issued an extensive statement of decision.  In rejecting mother's assertions, the commissioner explained:  "[T]he primary basis of Mother's request is a single incident of a failed alcohol treatment intervention in June 2010.  Although this attempted intervention was ill conceived, it does [not] form a sufficient basis for the imposition of a permanent restraining order.  The Court finds Mother's additional allegations either inconsistent with her behavior, e.g., reconciliation and continued cohabitation since 2010, or are unsupported by the facts, e.g., vague allegations without the proper indicia of reliability, no third party support or documentary evidence.  Finally, the Court believes that if any abuse did in fact occur, that it is not necessary to enter a permanent order to prevent future abuse."  In accepting father's assertions, the commissioner explained:  "Mother's uncontrolled alcohol consumption poses a risk both to Father and the children necessitating Court orders to prevent the

---

[4]     Consequently, we see no merit to mother's argument that she was prejudiced because prior to the hearing the commissioner failed to expressly rule on her motions in limine, in which she objected to "Robert Gray's proposed evidence," and sought "to strike certain [court] filings and exclude any information contained therein from evidence" at the hearing.

3

recurrence of acts of domestic violence. The Court did not find credible Mother's testimony that she does not have a drinking problem. Mother objected to the use of her doctor's letter and had within her control the ability to prove that she does not have a drinking problem. She failed to do so. The Court also finds Mother's denial of the various incidents as not credible. Father presented a detailed chronology with dates and facts. Respondent's Exhibit E. While this exhibit was not entered into evidence, the Court finds Father's presentation of fact and details credible in a manner in which it did not find Mother's presentations of conclusions and allegations. Further, it is not credible that Mother would 'not recall' an incident where her daughter smashed a bottle of wine on the driveway in an attempt to keep Mother from drinking and driving." The commissioner further found that "Mother recklessly placed the children and Father in reasonable apprehension of imminent serious bodily injury, including driving under the influence of alcohol. The evidence reflects that Mother made threats to the [F]ather, verbally abused Father in front of the children, and drove the children while [she was] intoxicated. Additionally, the Court finds that Mother physically abused Father on at least two occasions." The commissioner also issued temporary orders regarding child custody and visitation, and granted father sole use, possession, and control of the marital residence. Mother now appeals from the commissioner's orders.[5]

---

[5] In her notice of appeal in Case No. AF11603446, mother appeals from the commissioner's proposed statement of decision filed on March 22, 2012, in which he gave his reasons for issuing the February 16, 2012 orders. In the absence of any prejudice, we shall construe the notice of appeal as a notice of appeal from the commissioner's statement of decision that was confirmed by an appealable order entered on April 18, 2012. (See Cal. Rules of Court, rule 8.100(a)(2) [notice of appeal must be liberally construed]; *Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 901 [reviewing court may treat a statement of decision as appealable "when a statement of decision is signed and filed and does, in fact, constitute the court's final decision on the merits"].) In her amended notice of appeal in Case No. AF12612795, mother appeals from the commissioner's February 16, 2012, orders, which granted Father's request for a permanent DVPA restraining order, and resolved the related issues of custody, visitation, and use, control, and possession of the marital residence.

Mother also argues that since the issuance of the commissioner's orders, the mother's dissolution action was transferred to Family Court Presiding Judge Honorable

4

## I.     Father's Motion to Dismiss Appeals

Father filed a motion to dismiss on the ground that an order of September 27, 2012, issued by Judge Pulido, has rendered moot mother's appeals challenging the orders that resolve the parents' requests for permanent restraining orders.  However, mother correctly argues that the denial of her request for a permanent restraining order has not been rendered moot by any later court orders.  Concededly, the permanent restraining order in favor of father and against mother has now expired, arguably rendering moot mother's appeal from that order.  Nevertheless, the expired permanent restraining order could have detrimental consequences to mother in a further proceeding involving domestic violence.  Section 6306, subdivision (b)(1), provides that, before deciding whether to issue a domestic violence restraining order, "the court shall consider . . . any prior restraining order."  (See *In re Cassandra B*. (2004) 125 Cal.App.4th 199, 209-210.)  Accordingly, we deny father's motion to dismiss mother's appeals from the February 16, 2012 orders that resolve the parents' requests for permanent restraining orders.[6]

## II.     Temporary Restraining Orders Issued by Judge Petrou

Mother challenges Judge Petrou's temporary restraining orders, presenting several arguments including that the orders were void.  Because the notices of appeal seek review only of the commissioner's February 16, 2012 orders, mother has forfeited review of Judge Petrou's temporary orders that expired on January 31, 2012.  (Code Civ. Proc.,

---

Stephen Pulido, who issued several orders "that have invaded Mother's privacy rights, denied Mother her rights to due process, and denied Mother access to community property funds to litigate her case and maintain the standard of living enjoyed during the nearly 20-year marriage."  Because mother has not filed notices of appeal from those rulings and orders, we lack jurisdiction to consider them at this time. (*Sole Energy Co. v. Petrominerals Corp*. (2005) 128 Cal.App.4th 212, 239.)

[6]     However, we shall grant father's motion to dismiss mother's appeal from the commissioner's other February 16, 2012 orders that temporarily granted father physical custody of the children and sole use, control, and possession of the marital residence, and granted mother visitation.  Those orders have been rendered moot by Judge Pulido's September 27, 2012, order, which address the same matters based on additional evidence considered by the court.

§ 904.1, subd. (a)(6); see *McLellan v. McLellan* (1972) 23 Cal.App.3d 343, 357 [temporary DVPA orders are separately appealable].)  Concededly, an order can be set aside at any time on the ground it is void when "the court lack[s] personal or subject matter jurisdiction or exceed[s] its jurisdiction in granting relief which the court had no power to grant."  (*Rochin v. Pat Johnson Manufacturing Co*. (1998) 67 Cal.App.4th 1228, 1239.)  However, mother's argument that the temporary orders are void is "no longer available" to her because those orders have "fulfilled [their] function and [were] supplanted by" the February 16, 2012, orders, which were based on the evidence presented at the hearing before Commissioner Nixon.  (*City of Los Angeles v. Superior Court* (1925) 196 Cal. 445, 449.)  Accordingly, any purported appeal from the temporary orders would be moot.  (*Consol. etc. Corp. v. United A. etc. Workers* (1946) 27 Cal.2d 859, 862-863; *O'Kane v. Irvine* (1996) 47 Cal.App.4th 207, 210, fn. 4.)[7]

---

[7]     Additionally, we do not need to address mother's complaints regarding her motions for reconsideration of Judge Petrou's temporary orders.  Assuming arguendo that the motions had not been properly considered by either Judge Petrou or the commissioner, an order denying a motion for reconsideration is not appealable, even when the motion is based on new facts or law.  (See *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1576; *Tate v. Wilburn* (2010) 184 Cal.App.4th 150, 159-160; *Crotty v. Trader* (1996) 50 Cal.App.4th 765, 769.)

Mother also complains that we should consider that the temporary orders prevented her from presenting relevant, admissible evidence at the hearing before the commissioner.  However, a review of the hearing transcripts indicates the commissioner favorably considered mother's concerns that she could not refute father's testimony because of the prohibitions in the temporary restraining order.  For example, when father sought to testify regarding his discussions with school officials regarding the children's behavior, the commissioner sustained mother's objection to the testimony on the ground that she could not refute the testimony because the temporary restraining order prohibited her from contacting the school or going to the school to obtain the children's records.  The commissioner ruled that if father was going to testify about any information he had received from school officials, his testimony would have to be limited to information that he had discussed with mother at some time.  Otherwise, "there is no evidence that [mother] would have known about it and had the ability to obtain that information."

**III.** **Commissioner Nixon's Orders Resolving Parents' Requests for Permanent Restraining Orders**

Mother challenges on various grounds the commissioner's orders that resolved the parents' requests for permanent restraining orders. As we now discuss, none of her contentions requires reversal.

We find no merit to mother's contention that the commissioner committed prejudicial error by refusing to admit into evidence the children's declarations. Before the January 31 hearing, mother's counsel had prepared declarations based on statements that were made by mother to counsel about what the children had said and then the children allegedly signed the declarations. During mother's direct examination, her counsel sought to admit into evidence the children's declarations on the "issue of custody" and the removal of the children from their primary caregiver. The court refused to admit the declarations at that time because the children had not yet been independently interviewed by Family and Children's Bureau. Without the results of those interviews, the commissioner believed there were questions about the authenticity and trustworthiness of the declarations. Until the interviews were conducted, the commissioner believed it was inappropriate to accept the declarations. He explained that "[i]t may well prove to be that these declarations [are] absolutely exactly how these children feel but I want them interviewed before I'm going to take them a[s] [the] truth." In response to mother's counsel's recitation of certain portions of the Family Code, the commissioner stated he intended to follow section 3042[8] "to the letter," but the issue then

---

[8] Effective January 1, 2012, section 3042 was amended to read, in pertinent part: "(a) If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody or visitation, the court shall consider, and give due weight to, the wishes of the child in making an order granting or modifying custody or visitation. [¶] . . . [¶] (c) If the child is 14 years of age or older and wishes to address the court regarding custody or visitation, the child shall be permitted to do so, unless the court determines that doing so is not in the child's best interests. In that case, the court shall state its reasons for that finding on the record. [¶] (d) Nothing in this section shall be interpreted to prevent a child who is less than 14 years of age from addressing the court regarding custody or visitation, if the court determines that is appropriate pursuant to the child's best interests. [¶] . . . [¶] (f) To assist the court in determining whether the child wishes to

before him was whether the declarations should be admitted into evidence "without the children being present and when [he] is not aware completely of the facts . . . or why [the declarations were] signed." The commissioner again stated that although the declarations might be true, he wanted Family and Children's Bureau to provide him "with information as to where this is coming from. Certainly under [section] 3042 specifically as to the old[er] [child] the [c]ourt must at least consider [the child's] wishes and the court actually intends to consider both of the children's wishes but one must also keep in mind that [section] 3042 does not require the court to follow those wishes if it feels it's not in the best interest of the children but they must be heard. I intend on having them heard." Thereafter, at the February 6, 2012, hearing the commissioner indicated the children had been interviewed and he had received a report from Kathleen Hargin of Family and Children's Bureau. At the next hearing on February 8, 2012, mother's counsel indicated she had read the report "that was done by the mediator" who "spoke with the children." However, at no time thereafter did mother or her counsel renew the request for the admission of either child's declaration or make a request to call either child as a witness to testify at the hearing. Consequently, we cannot conclude the commissioner abused his discretion in the absence of a specific timely request made by mother or her counsel for the admission of the children's declarations or their testimony after the court received the report of the children's court-ordered interviews.[9]

express his or her preference or to provide other input regarding custody or visitation to the court, a minor's counsel, an evaluator, an investigator, or a mediator who provides recommendations to the judge pursuant to Section 3183 shall indicate to the judge that the child wishes to address the court, or the judge may make that inquiry in the absence of that request. A party or a party's attorney may also indicate to the judge that the child wishes to address the court or judge."

[9]     After the children were interviewed, father asked the commissioner how he was going to consider the report of the children's interviews because father "objected to the procedure through which Family Court Services solicited information from the children." The commissioner replied that it was his understanding "that the children were interviewed only for purposes of an assessment." The commissioner further explained that the interviews were "to determine whether or not the [commissioner] felt that the children need[ed] to have some type of counseling services provided to them," but the

8

We also see no merit to mother's argument that the commissioner committed reversible error by failing to grant a calendar preference and complete the hearing within 25 days of the issuance of the temporary restraining orders. (§§ 242, 244, 245[10].) As noted, Judge Petrou scheduled the hearing on both parents' separate petitions for

commissioner did not intend to use the interviews to determine visitation. Contrary to mother's contentions, we see nothing in the commissioner's statements that would have precluded her from renewing her request to have the commissioner consider the children's declarations or making a request for the admission of the children's testimony after their court-ordered interviews. Indeed, despite the commissioner's statements, mother's counsel argued in closing that the commissioner should consider that the assessment reports showed that "the children say they want their mother. That's what they said to the court. They said we want to be with our mother. They said father's never home."

In support of her argument regarding the commissioner's failure to consider the children's declarations, mother asks us to also consider evidence that was neither proffered nor admitted into evidence at the hearing before the commissioner. However, as an appellate court we are "limited to a consideration of the matter contained in the record" of the proceedings before the commissioner. (*People v. Siplinger* (1967) 252 Cal.App.2d 817, 825.) To now consider this evidence would be " 'in contravention of the general rule that an appellate court generally is not the forum in which to develop an additional factual record . . . .' " (*People v. Jenkins* (2000) 22 Cal.4th 900, 952-953.)

[10]    Section 242 provides, in pertinent part, that "[w]ithin 21 days, or if good cause appears to the court, 25 days from the date that a temporary [DVPA restraining] order . . . is granted or denied, a hearing shall be held on the petition." (§ 242, subd. (a).) "If a hearing is not held within the time provided in subdivision (a) [of section 242], the court may nonetheless hear the matter, but the [temporary] order is unenforceable unless reissued under Section 245." (§ 242, subd. (b).) Section 245 reads: "(a) The court may, upon the filing of a declaration by the petitioner that the respondent could not be served within the time required by statute, reissue an order previously issued and dissolved by the court for failure to serve the respondent. The reissued order shall remain in effect until the date set for hearing. [¶] (b) The reissued order shall state on its face the date of expiration of the order. [¶] (c) No fee shall be charged for the reissuance of the order unless the order has been dissolved three times previously." Section 244 reads: "(a) On the day of the hearing, the hearing on the petition shall take precedence over all other matters on the calendar that day, except older matters of the same character, and matters to which special precedence may be given  by law. [¶] (b)The hearing on the petition shall be set for trial at the earliest possible date and shall take precedence over all other matters, except older matters of the same character, and matters to which special precedence may be given by law."

permanent restraining orders for the same day, January 31, 2012, which was within 20 days of the issuance of the temporary orders. As the commissioner explained, he then "allowed testimony from both cases at the same time in order to expedite. The court believes that there has been testimony on both of the matters and that, therefore, even though 25 days has elapsed the matter has been ongoing. There is nothing in the statute that says that the matter must be resolved within 25 days only that it must be begun. The court believes that it has been begun. We've had five days of . . . testimony on this matter. We have done everything we can to try to fit this [matter] in within the period of time that the parties are allowed. This court has personally moved three separate trials of other people's cases so that this matter could be heard in an expedited fashion. It has done the best [it] can under those circumstances." The commissioner further explained that the matters "did flow into one another rather than being separated as I would have perhaps liked to do it but I do not believe it was so prejudicial as to result in a need to in any way terminate proceedings or to find that" there was a failure to comply with the statutory requirements. We see no error or abuse of discretion in the commissioner's ruling.[11]

---

[11] Contrary to mother's contention, *Estate of Mitchell* (1999) 76 Cal.App.4th 1378 (*Mitchell*) and *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483 (*Nadkarni*) do not support her argument that a hearing for a permanent DVPA restraining order must be concluded within 25 days of the issuance of the temporary restraining order. In *Nadkarni*, the appellate court determined only that Darshana Nadkarni's application for a DVPA restraining order had sufficiently alleged abuse to support issuing an order to show cause (OSC) for a hearing on the matter. (173 Cal.App.4th at pp. 1495, 1498-1499.) The court further held only that a hearing date on the OSC must be set within 20 to 25 days of the application; the court did not hold that the hearing must be concluded within 25 days of the issuance of the OSC. (*Id.* at pp. 1494-1495.) In *Mitchell,* the appellate court was concerned with a violation of a temporary restraining order. (76 Cal.App.4th at p. 1387.) To the extent the court discussed the initial issuance of the temporary restraining order, it held only that an ex parte temporary restraining order "may remain in effect for not longer than 25 days. (Fam. Code, § 242.)" (*Mitchell, supra*, at p. 1387; italics added.) Relevant here, the court went on to note that "[e]ven if the ex parte restraining order has expired, however, *the trial court may hold a hearing on the OSC and issue a similar preliminary injunction.* (See Fam. Code, § 242, subd. (b).)" (*Mitchell, supra*, at p. 1387; italics added.) *Mitchell* supports the commissioner's ruling

10

We also see no merit to mother's argument that the commissioner committed prejudicial error by allowing father to call Officer Carr to testify out of order during mother's case in chief over her objection. Because there was a dispute as to which parent first filed their DVPA request on January 18, 2012, the commissioner allowed mother to present her case in chief first to be followed by father's case in chief. When it appeared the matter would not be completed on January 31, at the conclusion of mother's testimony that day, the commissioner granted father's request to call Officer Carr to testify out of order because the officer had been subpoenaed to appear that day and the commissioner had "a limited amount of time." On this record, we see no abuse of discretion in the commissioner's ruling. (See *Rayii v. Gatica* (2013) 218 Cal.App.4th 1402, 1413 ["trial court acted within its discretion by allowing the witnesses to testify out of order so as to avoid having to continue the trial date, force the witnesses to cancel their vacation plans, or forego their testimony"].) In all events, mother's claims of prejudice are unavailing. Mother asserts Officer Carr's testimony "was not favorable" to her and the commissioner's ruling prevented mother from concluding her case in chief and securing a ruling on her request for a permanent restraining order on January 31. However, the substance of Officer Carr's testimony would not have been different had the officer not been called to testify until after mother had concluded her case in chief and father had called the witness in his case in chief. Additionally, even if mother had concluded her case in chief on January 31, the commissioner would not have then ruled on her request for a permanent restraining order against father. Instead, as later confirmed by the commissioner, father would have been allowed to present his case in chief and the commissioner would have then taken both parents' petitions for permanent restraining orders under submission for judicial determination.

Relying on isolated portions of the record, mother also argues that the commissioner (1) "accept[ed] uncorroborated testimony of alcohol abuse and abuse of

in this case. Judge Petrou's temporary orders expired on January 31, 2012. At the end of each hearing date, the commissioner reissued a temporary restraining order that was effective only until the next hearing date.

children [in violation of her] rights to due process" and "allowed over objection testimony from Father as it relates to levels of drinking," (2) "heard extensive testimony from Father while on cross-examination by his attorney about the efforts and behaviors of the children and allegations of [Mother's] alcohol abuse," and (3) "allowed over objection extensive testimony regarding [Mother's] DUI conviction . . . that occurred 17 years ago." However, pertinent statutes and case law demonstrates the commissioner's challenged rulings do not warrant reversal. First, the commissioner was free to accept father's testimony even if not corroborated concerning mother's habitual or continual alcohol abuse and his personal observations of the effect of mother's conduct on the children's behaviors. (§ 3011, subd. (d) [before considering allegations of parent's habitual or continual abuse of alcohol court "*may* first require independent corroboration" of the allegations (italics added)]; see *Wainwright v. Superior Court* (2000) 84 Cal.App.4th 262, 268 [court is "empowered," *but not required*, to request independent corroboration of allegations of a parent's alcohol abuse]; *In re Marriage of Slivka* (1986) 183 Cal.App.3d 159, 163 [" ' "[t]he testimony of a witness, even the party himself, may be sufficient" [to support a judgment]' "]; *People v. Williams* (1988) 44 Cal.3d 883, 914 [lay witness may testify as to opinion with regard to alcohol-induced intoxication and sobriety if " 'rationally based on the perception of the witness' "]; see also *Margolis v. Teplin* (1958) 163 Cal.App.2d 526, 532-533 ["the error in the admission of some hearsay evidence (in an action tried by the court without a jury) is not prejudicial error, where there is otherwise enough competent evidence in the record to support the findings"].) Second, the commissioner could allow father's counsel to make father his own witness and question him regarding matters which were not brought out during father's examination by mother's counsel. (Evid. Code, § 772, subd. (c); [12] see *Figari v. Olcese* (1921) 184 Cal. 775, 782; *Bitsekas v. Parechanian* (1924) 67 Cal.App. 148, 154.) Third,

---

[12]     Evidence Code section 772, subdivision (c), reads, in pertinent part: "[A] party may, in the discretion of the court, interrupt his cross-examination . . . of a witness, in order to examine the witness upon a matter not within the scope of a previous examination of the witness."

we see no prejudicial error in the commissioner's admission of evidence of mother's 1995 DUI conviction. (Evid. Code, §§ 351, 352, 353[13].) When mother's counsel first objected to the admission of the evidence, the commissioner explained that evidence of the DUI conviction would be allowed on the ground that it was probative of whether mother was abusing alcohol, but that the weight of the evidence would be "based upon anything that I see beyond that. The mere fact that someone may have gotten a DUI 17 years ago does not make them an alcoholic today." When mother's counsel renewed her objection to the evidence, the commissioner again explained that the evidence was "probative of whether [mother] has a drinking problem," and could be "considered in terms of [a] pattern of the situation." The commissioner "fully expect[ed]" that in closing argument mother's counsel would argue that the conviction was "such a remote moment in time as to have no probative value."

Lastly, we reject mother's contention that the commissioner committed prejudicial error by admitting into evidence over her strenuous objections an unsigned "letter" dated June 12, 2010, which was "allegedly written by Mother's cosmetic doctor, who has no history of being an Expert as it relates to alcohol abuse." [14] When the letter was proffered

---

[13] Evidence Code section 351 reads: "Except as otherwise provided by statute, all relevant evidence is admissible." Evidence Code section 352 reads: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Evidence Code section 353 reads, in pertinent part: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: (a) . . . (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice."

[14] The unsigned letter dated June 12, 2010 purports to be from a physician with the credentials of "MD, MPH," without reference to any specialty, is addressed to the medical referral department of an insurance company, describes the results of a physical examination of mother and certain laboratory analysis and imaging studies, and concludes with the physician's recommendation "at this point that [mother] enter inpatient treatment for her alcohol addiction." Mother asks us to consider that since the hearing before the commissioner "it has come to light that the information contained in

13

by father, the commissioner sustained mother's objections to its admission on the grounds of hearsay and potential physician-patient privilege, and indicated the letter would not be admitted for the truth of the medical information contained in it. The letter was admitted into evidence "only to the extent" the letter showed why father took certain actions after he received the letter from mother's physician. We presume - and mother does not present a cogent argument to the contrary - that the commissioner considered the letter for the limited purpose for which it was admitted into evidence, and for no other reason. " 'As an aspect of the presumption that judicial duty is properly performed [(Evid. Code, § 664)], we presume . . . that the court knows and applies the correct statutory and case law [citation] and is able to distinguish admissible from inadmissible evidence, relevant from irrelevant facts, and to recognize those facts which properly may be considered in the judicial decisionmaking process.' [Citations] Stated another way, a trial court is presumed to ignore material it knows is incompetent, irrelevant, or inadmissible." (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526.) "Clearly, the mere fact that the court heard or read the evidence is not sufficient to overcome the presumptions. [Citations.] [¶] These presumptions, we conclude, are dispositive" of mother's contentions. (*Id.* at pp. 1526-1527.)

## DISPOSITION

The April 18, 2012, statement of decision, construed as an appealable order, denying Christine E. Gray's request for a permanent DVPA restraining order (Case No. AF11603446), and the order filed on February 16, 2012 granting Robert Gray's request for a permanent DVPA restraining order  (Case No. AF12612795) are affirmed.  Appeals

the letter[ ] is in fact false, based on the physical examination of Mother and blood tests." In support of her contention, mother has attached to her opening brief as exhibits the 2010 laboratory analysis and imaging study reports that are purportedly referred to in the June 2010 letter.  However, because those medical reports were neither proffered nor admitted into evidence at the hearing before the commissioner, we have not considered them in addressing her appellate contention.

14

from all other February 16, 2012 orders issued by Commissioner Thomas Nixon in Case No. AF12612795 are dismissed.  Robert Gray is awarded costs on appeal.

_____
Jenkins, J.

We concur:

_____
Pollak, Acting P. J.

_____
Siggins, J.