Filed 6/29/20

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re the Marriage of CAROLYN MULLONKAL and SITHAJ KODIYAMPLAKKIL. | C085825 |
| CAROLYN MULLONKAL,<br><br>Respondent,<br><br>v.<br><br>SITHAJ KODIYAMPLAKKIL,<br><br>Appellant. | (Super. Ct. No. SDR47206) |

APPEAL from a judgment of the Superior Court of Placer County, Suzanne Gazzaniga, Judge. Reversed with directions.

Stephanie J. Finelli for Appellant.

Downey Brand, LLP, Jay-Allen Eisen, Alexandra K. LaFountain and Dougherty & Associates, Frank E. Dougherty for Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II – VI of the Discussion.

1

When a spouse pays off student loans for education attained before the marriage with funds from salary earned during the marriage, does a trial court have discretion under Family Code section 2641[1] to deny reimbursement to the community because the nonstudent spouse did not contribute to the repayment of the loans or otherwise contribute to expenses during the marriage? In the published portion of this opinion, we conclude that section 2641 does not permit such discretion.

Wife Carolyn Mullonkal and husband Sithaj Kodiyamplakkil were married for three years and five months. Husband appeals from judgment of dissolution, as well as post judgment orders. He contends: (1) the community is entitled to reimbursement, under section 2641, for community funds spent repaying wife's educational loans; (2) reimbursement is also required for community funds used to pay wife's non-educational loans; (3) wife breached her fiduciary duty by transferring community property to family members; (4) the trial court abused its discretion in awarding only $10,000 of the over $108,000 in attorney's fees he incurred; (5) the court also abused its discretion in denying a new trial; and (6) the trial court erred in finding a bank account of husband's was community property. We agree with husband as to every contention except the fifth.

We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### Trial Evidence

Husband and wife were married on August 27, 2011. Three years and five months later, wife petitioned for divorce. They have one child, born shortly before the dissolution petition was filed.

---

[1] Undesignated statutory references are to the Family Code.

2

The couple met in India. When they married, wife was living with her parents in Michigan, completing her medical residency program, and earning around $45,000 to $50,000. Husband was then living and working in India.

After finishing her residency, wife worked for a Michigan hospital from July 2012 to May 2013, earning around $225,000 a year. She continued to live with her parents, and paid them for expenses, increasing the amount she paid as her salary increased.

In May 2013, wife moved to California and began working for a different health care provider. That month, husband moved from India to California, and they began living together. Husband obtained his residency card in July 2013. Wife recalled paying "a couple of immigration fees," for husband which she testified was not "very much."

Until wife filed for dissolution on January 27, 2015, the couple lived together[2] in a two bedroom, two bath apartment, which they rented for roughly $1,200 a month. They shared one car, which they leased from wife's brother for around $350 or $400 a month. Wife was then earning around $200,000 a year. She paid the rent and all expenses. Wife testified that beyond rent, utilities, and food, there were no other significant expenses other than education loan payments.

Wife had started paying off her medical school loans when she began her residency in 2009, approximately two years before the marriage. She had taken out roughly $120,000 in institutional education loans, and her parents, who had loaned her money for college, also paid for her first year of medical school. By early 2014, wife had paid off her institutional education loans. With interest, she paid around $153,000 to satisfy those loans — $130,000 of that was paid during marriage.

In early 2014, wife began paying off her loans from her parents. She paid them $2,000 a month and finished the payments with two lump-sum payments: $48,080.37 in

---

[2] The couple lived together during this time period, except for a two- or three-month period in 2014 when husband went to India.

3

December 2014 and $60,000 in January 2015. The last lump sum payment was made two days before wife met with a certified family law specialist, and 18 days before she filed for dissolution in January 2015. Wife did not tell husband about the $60,000 payment, though she testified she told him she was paying off her student loans and loans from her parents, and husband did not object.

Between September of 2011 and July of 2013, wife also wrote checks to her family amounting to more than $75,000. She testified that these included $9,500 to her brother: $500 as a gift and $9,000 to repay a loan he had given her during medical school. The checks also included $12,000 to her parents, as a gift and to pay for a new roof. Other checks were to her parents as gifts and to repay them for living expenses they had covered.

Wife also paid for travel for her parents and various family members. She paid for a trip to India for them. She paid for a cruise for her parents and her uncle in 2012. She flew her brother to Las Vegas in 2012 for his birthday. She paid for a cruise for her brother in 2013. She paid her parents' and brother's airfare to visit at Christmas 2013. And she paid for her parents to accompany her and husband on a cruise in 2014. Wife testified that she told husband about these payments and he did not object.

Wife and husband went on several trips during the marriage. In 2013, they went to Hawaii for a work conference. Her employer paid for part of the trip; she paid the rest. The next year, they went to Hawaii twice. She paid for those trips, as well as husband's trip to India.

### The Trial Court's Statement of Decision

After the parties submitted proposed statements of decision, the trial court issued its final statement of decision. As pertinent to this appeal, the court denied husband's request to reimburse the community for community funds used to pay wife's education expenses. It also declined to find wife breached her fiduciary duty in payments made to family members for "rent, costs of living, reimbursement or for nominal gifts of money"

4

and denied reimbursement to the community for those expenditures. The court awarded husband $5,000 in attorney's fees, which was on top of $5,000 in fees awarded pre-trial. It declined to rule on husband's request for support under federal immigration law. And the court determined one of the bank accounts in husband's name contained $4,500 in community property.

Husband subsequently moved for a new trial, raising *inter alia*, the court's refusal to rule on his request for support based on federal immigration law. Husband relied on *In re Marriage of Kumar* (2017) 13 Cal.App.5th 1072 (*Kumar*), which was published after the trial. The *Kumar* court held an immigrant spouse has standing to enforce in state court the support obligation created by a federal I–864 affidavit. (*Kumar,* at p. 1075.) The trial court denied the motion.

Husband also moved for a change in attorney's fees awarded, requesting an additional $41,874.50. The trial court denied the request.

## DISCUSSION

### I. Reimbursement for Community Funds Spent on Education Loans

Husband contends the community is entitled to reimbursement, under section 2641, for community funds used to pay wife's education loans, both from lending institutions and from her parents. Wife maintains the trial court acted within its discretion in denying reimbursement. We must agree with husband.

### A. Section 2641

Section 2641 addresses community contributions to education or training.[3] It directs that on dissolution, "[t]he community *shall be reimbursed* for community

---

[3] Section 2641 provides: "(a) 'Community contributions to education or training' as used in this section means payments made with community or quasi-community property for education or training or for the repayment of a loan incurred for education or training, whether the payments were made while the parties were resident in this state or resident outside this state. [¶] (b) Subject to the limitations provided in this section, upon

5

contributions to education," including education loan repayments. (§ 2641, subd. (b)(1), italics added.) But reduction or modification of reimbursement is allowed, "to the extent circumstances render such a disposition unjust . . . ." (§ 2641, subd. (c).) Exceptions rendering such disposition unjust *include, but are not limited to*: (1) where the community has "substantially benefited" from the education; (2) where the education of one party is offset by the education of the other party, for which the community also

---

dissolution of marriage or legal separation of the parties: [¶] (1) The community *shall be reimbursed* for community contributions to education or training of a party that substantially enhances the earning capacity of the party. The amount *reimbursed* shall be with interest at the legal rate, accruing from the end of the calendar year in which the contributions were made. [¶] (2) A loan incurred during marriage for the education or training of a party shall not be included among the liabilities of the community for the purpose of division pursuant to this division but shall be assigned for payment by the party. [¶] (c) The *reimbursement* and assignment required by this section shall be reduced or modified to the extent *circumstances render such a disposition unjust*, *including, but not limited to*, any of the following: [¶] (1) *The community has substantially benefited from the education*, training, *or loan incurred for the education* or training of the party. There is a rebuttable presumption, affecting the burden of proof, that the community has not substantially benefited from community contributions to the education or training made less than 10 years before the commencement of the proceeding, and that the community has substantially benefited from community contributions to the education or training made more than 10 years before the commencement of the proceeding. [¶] (2) The education or training received by the party is offset by the education or training received by the other party for which community contributions have been made. [¶] (3) The education or training enables the party receiving the education or training to engage in gainful employment that substantially reduces the need of the party for support that would otherwise be required. [¶] (d) *Reimbursement* for community contributions and assignment of loans pursuant to this section is the exclusive remedy of the community or a party for the education or training and any resulting enhancement of the earning capacity of a party. However, nothing in this subdivision limits consideration of the effect of the education, training, or enhancement, or the amount *reimbursed* pursuant to this section, on the circumstances of the parties for the purpose of an order for support pursuant to Section 4320. [¶] (e) This section is subject to an express written agreement of the parties to the contrary." (Italics added.)

6

contributed; and (3) where the party's education substantially reduces that party's need for support payments. (§ 2641, subd. (c).)

For the first exception — where the community has substantially benefited from the education — a rebuttable presumption applies. (§ 2641, subd. (c)(1).) If community contributions to the education costs are made less than 10 years before commencement of the dissolution proceeding, it is presumed that the community has not substantially benefited. (§ 2641, subd. (c)(1).) For contributions made more than 10 years before proceedings, the opposite presumption applies. (*Ibid*.)

The statute is also "subject to an express written agreement of the parties to the contrary." (§ 2641, subd. (e).)

## B. Additional Background

At trial, husband argued that during their marriage, they maintained a relatively low standard of living, which wife took advantage of to "accelerate" her student loan payments. And "other than a few family vacations," he did not enjoy a standard of living commensurate with the salary wife brought to the community, while wife enjoyed the benefit of paying off her student loans.

The trial court denied the request for reimbursement as "contrary to law and unjust." It noted that section 2641, "remedies the injustice that may occur when a married couple separates shortly after graduation but before the community is benefitted by the education when payments are made related to the education." The court went on to find that wife began repaying her institutional education loans before marriage and continued to pay them during marriage. She had also repaid the "significant amount" of money and other support her parents had provided her to complete her education and training. And there was an expectation that wife would repay her family despite the absence of documentation between the family members.

The court also found that before husband moved to the U.S., he earned income in India and held assets. Yet, he contributed nothing to wife's education and loan

7

repayments. And after moving to California, husband did not work and provided no financial support toward community living expenses or wife's educational expenses.

The court continued: "After weighing and balancing the facts in this case, the court finds the evidence established in this matter is a departure from the remedy envisioned by the legislature . . . this case does not present with a student spouse who has devoted substantially all their time and effort to an educational pursuit while the other spouse (Husband in this case) devotes substantially all their time and work earning income to support the expenses of the community and to support the education of the student spouse." Rather, "during this marriage there was a strong understanding the parties would work diligently to avoid accumulated debt and the evidence establishes they engaged in the disciplined avoidance of accumulated debt."

The trial court further found that any presumption that the community had not substantially benefited from wife's education had been rebutted. It reasoned that wife's enhanced earning capacity was a result of her education. And her salary "substantially benefitted the community" by paying the family's daily living expenses, paying some of husband's immigration fees, and supporting the post-separation expenses of both parties.

## C. Analysis

### 1. Standard of Review

At the outset, the parties disagree over the applicable standard of review. Husband maintains review is *de novo*, arguing the trial court's ruling involved statutory interpretation. Wife responds that abuse of discretion applies, pointing to the statute's expansive language, "including, but not limited to," and arguing the Legislature intended to afford the trial court "broad discretion." The answer is somewhere in the middle.

"An abuse of discretion occurs when the ruling exceeds the bounds of reason. [Citation.] But, the exercise of discretion is not unfettered . . . . [Citation.] 'All exercises of discretion must be guided by applicable legal principles, . . . which are derived from the statute under which discretion is conferred. [Citations.] If the court's

8

decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law.' " (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 (*Eneaji*))

Accordingly, in determining whether the trial court has abused its discretion, we first determine de novo whether the trial court applied the correct legal standard when exercising discretion. (*Eneaji v. Ubboe, supra,* 229 Cal.App.4th at p. 1463; see also, *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 [to determine if a court abused its discretion, we must consider "the legal principles and policies that should have guided the court's actions"]; *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297-1298 (*City of Sacramento*) [actions that transgress the confines of the applicable principles of law are outside the scope of discretion; reviewing court determines at the outset whether the trial court applied the correct legal standards to the issue in exercising its discretion].)

## 2. The "Including But Not Limited To" Exception

In arguing the trial court acted within its discretion, wife maintains substantial evidence supports the trial court's finding that reimbursement would be "unjust" under the circumstances. We, however, conclude the trial court relied on improper criteria and an incorrect legal assumption in concluding the community was not entitled to reimbursement. (See *Eneaji*, *supra*, 229 Cal.App.4th at p. 1463.)

As husband notes, caselaw interpreting section 2641 and its predecessor, Civil Code section 4800.3, is "sparse."[4] Indeed, no case addresses the "including, but not limited to" language in subdivision (c) of section 2641. Wife argues that because

---

[4] Section 2641 continued former Civil Code Section 4800.3 without substantive change. (Recommendation: 1994 Family Code (Nov. 1993) 23 Cal. Law Revision Com. Rep. (1993) p. 292.)

husband did not pay for any living or educational expenses while she acquired her degree and repaid her education debt, denying reimbursement was within the trial court's broad discretion.[5] She maintains that the "including but not limited to" language signals legislative intent to confer "broad discretion" in circumstances not specifically enumerated.

We agree that section 2641's exception can apply to unenumerated circumstances, but we disagree that the scope of the court's discretion is as broad as wife suggests.

### a. Ejusdem Generis

In construing expansive general language in a statute, we apply the principle that where a particular class of things modifies general words, we construe those general words to apply only to things of the same general nature or class as the enumerated items. (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141 [interpreting the scope of an "including, but not limited to" clause]; *People v. Arias* (2008) 45 Cal.4th 169, 180 (*Arias*) [same].) Accordingly, any unenumerated exception to reimbursement under section 2641 must be " ' " 'of the same kind,' " ' " as the enumerated exceptions. (See *Arias,* at p. 180.) This rule of construction, known as "ejusdem generis," is " 'based on the obvious reason that if the Legislature had intended the general words to be used in

---

[5] Wife points to husband's degree in mechanical engineering and status as a "highly-skilled" business analyst, noting that defendant was employed during the first two years of marriage, and held stocks worth more than $100,000 but did not financially support her in any way. She also notes that husband ceased working when he came to live with wife, contributing no financial support. And his efforts to find work were "minimal at best." Regarding earning ability for purposes of spousal support, the trial court found husband did not have the legal ability to work in the U.S and found insufficient evidence to impute income to him.

10

their unrestricted sense, it would not have mentioned the particular things or classes of things which would in that event become mere surplusage.' " (*Ibid*.; *Kraus,* at p. 141.)[6]

Viewing section 2641's enumerated exceptions, a pattern of purpose emerges. In all three exceptions warranting reduction or modification of community reimbursement, both spouses, as members of the community, derive commensurate benefits from one spouse's education. No one spouse receives a windfall.

In the first exception, subdivision (c)(1), the community has "substantially benefited." As the Law Revision Commission observed "[if] the marriage endures for some time with a high standard of living and substantial accumulation of community assets attributable to the medical training, it might be inappropriate to require reimbursement." (Recommendation Relating to Reimbursement of Educational Expenses (Sept. 1983) 15 Cal. Law Revision Com. Rep. (1983) p. 242.) In the second exception, subdivision (c)(2), one party's education offsets the other's. In the third exception, subdivision (c)(3), one party's education relieves the other party's obligation to provide support payments.

Mutual benefit is the common denominator in these exceptions, and no one spouse receives a windfall. Thus, applying the doctrine of ejusdem generis to the phrase "including, but not limited to" in section 2641, subdivision (c), we conclude a court is

---

[6] Wife cites *Arias, supra*, 45 Cal.4th 169 for the proposition that the phrase "including, but not limited to" in subdivision (c) of section 2641 " ' connotes an illustrative listing, one purposefully capable of enlargement.'" (*Arias,* at p. 181.) But wife does not address the *Arias* court's discussion of the ejusdem generis doctrine and how it applies to limit the scope of the enlargement. Wife similarly cites *Major v. Silna* (2005) 134 Cal.App.4th 1485, for the proposition that "including, but not limited to" signals the Legislature's intent that the statute apply to items not specifically listed. But again, wife ignores the *Major* court's discussion of ejusdem generis, a doctrine that court referred to as "of ancient vintage." (*Major,* at p. 1494.) In short, wife has not explained in her briefing why the doctrine does not apply here or alternatively, how it should apply to support her position.

limited to circumstances that are similar in nature to those enumerated — circumstances in which both parties benefit and no one party receives a windfall.

Here, however, no such mutual benefit appears. Wife's education paid off her separate education debts and enhanced her post-dissolution earning potential. And had those education debts not been paid, she would have been assigned them upon dissolution. (§§ 2627, 2641) Husband, on the other hand, received no such commensurate benefits, nor did he enjoy the standard of living the community could have achieved during the marriage.

The trial court relied on husband's failure to contribute to wife's education or loan repayments or family expenses, but nothing in the statute contemplates denying reimbursement to the community where the student spouse pays for her own education or where the nonstudent spouse did not somehow earn an entitlement to an equal share of the community. Indeed, the statute refers to "community contributions to education," and makes no reference to the source of the community contribution. (§ 2641, subd. (a).)

### b. Ejusdem Generis and Statutory Intent

We are mindful that "[m]axims of statutory construction, including the doctrine of *ejusdem generis*, are not immutable rules but instead are guidelines subject to exceptions." (*Wishnev v. The Northwestern Mutual Life Ins. Co.* (2019) 8 Cal.5th 199, 213.) As such, if application of ejusdem generis would frustrate the statute's underlying intent, the doctrine must be overridden by our fundamental objective of ascertaining and effectuating the statute's underlying intent. (*Id*. at pp. 213-214.)

The trial court, here, reasoned that reimbursement would be "a departure from the remedy envisioned by the Legislature" apparently because "this case does not present with a student spouse who has devoted substantially all their time and effort to an educational pursuit while the other spouse . . . *devotes substantially all their time and work earning income to support the expenses of the community and to support education of the student spouse*." (Italics added.)

In considering legislative intent, we note that the trial court's reasoning violates a basic tenant of community property law: income earned during the marriage belongs equally to the community regardless of who earned it. (§ 760 [property acquired during marriage is community property unless it comes within a specified exception]; see also *In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850-851 ["Acquisitions and gains which are directly or indirectly attributable to community expenditures of labor and resources are shared equally by the community"].) We must construe section 2641 with this basic tenant in mind. (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663 [" '[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect' "].)

The trial court's reasoning suggests the Legislature intended the nonstudent spouse would have to *earn a right* to share in the community assets. We think that had the Legislature intended such a departure from a basic tenant of community property law, it would have said so. We expect it would have expressly provided an exception for where the nonstudent spouse fails to prove he either helped repay the student loan debt or made other contributions to the community.

Instead, the statute directs that reimbursement be made to the community and never uses the word "compensation" or in any way suggests the nonstudent spouse must earn his half interest in the community. (See *In re Sullivan* (1984) 37 Cal.3d 762, 770-771, conc. & dis. opn. Mosk, J. [predecessor statute Civil Code section 4800.3 provided for "reimbursement," not "compensation"; the reimbursement is to be made to the community for the use of a community asset].)

A review of the Law Revision Commission comments for former Civil Code section 4800.3 (the predecessor to section 2641) similarly shows nothing suggesting nonstudent spouses must work or contribute to the community in order to qualify the community for reimbursement. The commission cited circumstances where reimbursement would be inappropriate, which later became the section 2641, subdivision

13

(c) circumstances. (*Ibid*.; § 2641, subd (c).) A close reading of those exceptions reveals they were proposed to ensure both spouses benefit equally in the community property and prevent spouses from obtaining a windfall — not to require a spouse to earn reimbursement.

Indeed, the Commission noted it would be equitable "to require the student spouse to reimburse the community for the community expenditures for his or her education and training. [The reimbursement] solution in effect gives the working spouse the same amount the student spouse was given for the education. . . . *It puts the parties on equal footing* without generating a windfall for the working spouse or permanently impairing the student spouse's future.[7] *It takes from the student spouse only what was actually given and restores to the working spouse only what he or she actually lost*." (Law Revision Com. (1983) p. 235, italics added.) Thus, the Commission's focus was the community property interest the nonstudent spouse would lose absent community reimbursement — not what that spouse contributed to the community.

To be sure, the 1983 Commission referred to the nonstudent spouse as the "working spouse" throughout the commentary.[8] But it did so to describe the relevant party in a typical scenario the proposed legislation was designed to address: where the education was received during the marriage and the nonstudent spouse was the sole worker. (Law Revision Com. (1983) p. 233 ["It is not uncommon for one spouse to work

---

[7] The reference to a windfall for the working spouse relates to the Commission's rejection of the legislative option discussed by legal commentators of making the student spouse's education a community property asset to be divided equally upon dissolution. As the Commission observed, "to give the working spouse an interest in half the student spouse's increased earnings for the remainder of the student spouses's life because of the relatively brief period of education and training received during marriage is not only *a windfall* to the working spouse but in effect a permanent mortgage on the student spouse's future." (Law Revision Com. (1983) pp. 234-235, italics added.)

[8] The 1993 Commission report did not use the term "working spouse."

so the other can attend school"].)  Notably, it was without referencing to the "working spouse," that the Commission stated, "[t]he community should be reimbursed for expenditures made during marriage regardless when the education was received."[9]  (Law Revision Com. (1983) p. 237.)

We are sympathetic to the result the trial court apparently sought to achieve here. But we must conclude the ruling that reimbursement was unjust based on the husband's failure to contribute to education debt repayment or community expenses was grounded on improper criteria and an incorrect legal assumption.  Therefore it was a misapplication of the law and an abuse of discretion.  (See *Eneaji, supra,* 229 Cal.App.4th at p. 1463; *City of Sacramento, supra*, 207 Cal.App.3d at pp. 1297-1298.)

### 3.  Exception where the Community has Substantially Benefited

As noted, section 2641, subdivision (c)(1) provides that if community contributions to education costs are made less than 10 years before commencement of the dissolution proceeding, it is presumed that the community has not substantially benefited. (See fn. 4, *ante*.)  The trial court alternatively rested its ruling on its conclusion that the presumption had been rebutted in this three-year marriage.  The court ruled this was so

---

[9]  Wife similarly relies on *In re Marriage of Weiner* (2003) 105 Cal.App.4th 235. Quoting *In re Marriage of Slivka* (1986) 183 Cal.App.3d 159, the *Weiner* court cited the inequity for the working spouse that occurred prior to the passage of section 2641's predecessor:  "The injustice of this scheme is evident in that the student spouse acquires an increased opportunity for higher earnings and fulfillment from which the other spouse may derive no benefit." (*Weiner,* at p. 240.)  But we do not read *Weiner* and *Slivka* to require the nonstudent spouse to contribute to the student spouse's education.  In both cases, the nonstudent spouse contributed financially to the "community effort," and both courts held such a situation presented an injustice the Legislature sought to remedy.  But neither court suggested contributions to the community effort was a predicate to community reimbursement or that community reimbursement where no financial contribution had been made by the nonstudent spouse would be an injustice warranting denial of reimbursement.  Cases are not authority for propositions not considered. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900, fn. 7.)

15

because wife's education paid some of husband's immigration fees and supported their living expenses pre- and post-separation. On appeal, wife also points to the three paid vacations to Hawaii as well as husband's solo trip to India.

We cannot see how the combined benefit of 18 months of modest living expenses along with four trips could reasonably rebut the presumption that the community had not "substantially benefited" from the community contribution toward wife's education loan payments. In making its separate ruling on spousal support, the trial court found the marital standard of living was low. It noted the parties "had not yet reached a comfort level of even a middle-class standard of living by the time they separated." Yet, during the marriage, $130,000 was spent to pay wife's institutional education loans, on top of amounts spent to repay the parents for their contributions to wife's education expenses. Regarding husband's immigration expenses, wife testified, "I don't remember the specific amounts. I don't think it was very much." Given the value of the community benefit (18 months of less than middle class living expenses and four trips) was a relatively small percentage of the value of the community funds expended toward education, we conclude the trial court abused its discretion in concluding that the community "substantially benefited" thereby rebutting the statutory presumption.

**4. Oral Understanding between the Parties**

Finally, the trial court relied on its finding that the parties had "a strong understanding" that they would work to avoid accumulated debt. But while section 2641 allows for an exception to reimbursement when the parties have an express written agreement (§ 2641, subd. (e), see fn. 4, *ante*.), merely having a "strong understanding" is insufficient.

16

With no express written agreement, no exception pertaining to any agreement exists.[10]

### 5. Conclusion

Based on the above, we direct that the community be reimbursed for community expenditures made during the marriage towards wife's institutional and family-provided education loans.

## II. Section 920 – Reimbursement of Noneducation Loan Payments

Husband next contends the community has a right of reimbursement, under Section 920, for wife's payments to her parents. Section 920 creates a right of reimbursement where a spouse applies community property to satisfy a debt, and where the right to reimbursement is exercised within three years of actual knowledge of the community property's application.[11] (§ 920, subd. (a), (c).) Husband argues wife's debt

---

[10] The Law Revision Commission suggested the Legislature enact an exception for when the parties have an agreement but recommended the exception require the agreement be in writing, noting "agreements or understandings may not be clearly articulated" and "they may generate substantial litigation." The Commission concluded, "to ensure certainty, the agreement should be in writing." (Law Revision Com. (1983) p. 238.)

[11] Section 920 provides: "A right of reimbursement provided by this part is subject to the following provisions: [¶] (a) The right arises regardless of which spouse applies the property to the satisfaction of the debt, regardless of whether the property is applied to the satisfaction of the debt voluntarily or involuntarily, and regardless of whether the debt to which the property is applied is satisfied in whole or in part. *The right is subject to an express written waiver of the right by the spouse in whose favor the right arises.* [¶] (b) The measure of reimbursement is the value of the property or interest in property at the time the right arises. [¶] (c) The right shall be exercised not later than the earlier of the following times: [¶] (1) Within three years after the spouse in whose favor the right arises has actual knowledge of the application of the property to the satisfaction of the debt. [¶] (2) In proceedings for division of community and quasi-community property pursuant to Division 7 (commencing with Section 2500) or in proceedings upon the death of a spouse." (Italics added.)

to her parents was separate debt, having been incurred prior to marriage, and that he timely exercised his right by claiming a breach of fiduciary duty in his trial brief.

Wife responds that section 920 does not govern her education loans. Husband, in reply, agrees the education loans are governed by section 2641, but he maintains the debt to wife's parents for living expenses and other items of support are entitled to reimbursement under section 920. We must agree with husband.

### A. Additional Background

In his trial brief, husband asserted wife breached her fiduciary duty by taking "nearly $300,000 of community assets over a two-year period and us[ing] it for her own, personal purposes (inordinate acceleration of student loan debt, gifts or inordinate acceleration of loan debts to Wife's parents, and paying for Wife's family to go on vacations and travel back and forth to California)." In closing argument, husband's counsel similarly argued, "So we have the education reimbursement. We have the breach of fiduciary duty. We also have Family Code Section 920 reimbursement. That deals [with] did she use community money to pay a separate debt, reimbursement may be ordered by the Court."

The trial court's statement of decision did not directly address section 920, but in denying husband's breach of fiduciary duty claim, the court declined to order reimbursement for payments made to family members for rent and cost of living.

### B. Analysis

The parties are correct that reimbursement for repayment of education loans is governed by section 2641 — not section 920. But as to repayment of non-education debts, section 920 applies. (See § 902 [" 'Debt' means an obligation incurred by a married person before or during marriage, whether based on contract, tort, or otherwise"].) And under section 920, denying reimbursement for those debts was error. Unlike section 2641, section 920 does not include a mechanism for the court to deny reimbursement. (See fn. 12, *ante*.)

18

Though the trial court implicitly found husband knew and consented to the payments, like section 2641, subdivision (e), section 920 reimbursement can be avoided only by "express written waiver," to which there is none. (§ 920, subd. (a), see fn. 12, *ante*.) Similarly, the finding that wife managed funds "consistent with the habit and custom of the family, [and] consistent with their fiscal practices," also fails to give rise to an exception.

With nothing in the record rendering section 920 inapplicable, we conclude the trial court erred in failing to order reimbursement for community funds used to pay wife's noneducational debt.

### III. Breach of Fiduciary Duty – Wife's Gifts to her Family

Husband next contends wife's transfer of community property to her family members breached her fiduciary duties as a matter of law. We agree.

### A. Additional Background

Husband sought, under section 1101 to recover funds paid to wife's family members in breach of her fiduciary duty. The trial court's statement of decision found no breach of fiduciary duty and declined to order reimbursement for "payments made to family members for rent, costs of living, reimbursement or for the *nominal* gifts of money made by Wife . . . ." (Italics added.)

The court reasoned the "credible testimony of Wife establishes she did not breach her obligations to manage the community estate for the benefit of the community. The evidence establishes she managed the portion of the community she managed consistent with the habit and custom of the family, consistent with their fiscal practices and she kept Husband informed." Wife's management of the community property was also "consistent" with the parties' "involvement with their extended families . . . ." The court also explained, "To the extent Husband claimed either lack of consent or knowledge, the court was not persuaded."

19

## B.  Analysis

On appeal, husband argues that ruling was incorrect as a matter of law.  He maintains that gifts to wife's parents totaling $26,000, along with $18,000 for travel are hardly nominal:  "Combined, they exceed the $34,921 of community property left for division."  He also notes that consent for such transfers must be in writing.[12]

Wife responds that husband fails to account for a trip involving the entire family including husband and wife.  She also asserts that when the $44,000 is spread over the 41-months of marriage, it amounts to just over $1,000 a month, a small fraction of her earnings.  And citing the court's finding that defendant's testimony, indicating he did not know of the transfers, lacked credibility, wife argues husband waived his right to require written consent to the gifts because he never objected during the marriage.  We agree with husband.

Section 1101 gives a spouse a claim against the other spouse for a breach of fiduciary duty that "results in impairment" to the claimant spouse's interest in the community estate.  (§ 1101, subd (a).)[13]  It includes all transactions that detrimentally impact the claimant spouse's interest in the community estate.  (*Ibid*.)  Section 1100 proscribes a spouse from gifting or disposing of community personal property "for less than fair and reasonable value."  Exceptions exist where the other spouse provides

---

[12]  Husband also argues that wife's transfer of $60,000 to her parents two weeks before separation was a breach of fiduciary duty as a matter of law.  But the record indicates that amount was to repay debt owed to wife's parents, covered in our discussion of sections 920 and 2641.

[13]  Section 1101, subdivision (a) provides:  "A spouse has a claim against the other spouse for any breach of the fiduciary duty that *results in impairment to the claimant spouse's present undivided one-half interest in the community estate*, including, but not limited to, a single transaction or a pattern or series of transactions, which transaction or transactions have caused or will cause a detrimental impact to the claimant spouse's undivided one-half interest in the community estate."  (Italics added.)

"written consent" or where a gift is mutually given by both spouses, or for gifts given by one spouse to the other.  (§ 1100, subd. (b).)[14]

Here, the record shows wife made gifts of significant value to her family, and no exception is apparent.  Wife's claim that the gifts were a small fraction of her earnings, is unpersuasive.  Section 1101 provides no test for weighing one's earnings against the value of the gifts.  It simply applies where the breach "results in impairment" to the claimant spouse's interest in the community estate.  (§ 1101, subd. (a).)  Moreover, as husband points out, the amount gifted exceeds the community property left for division.

Further, wife's contention that husband waived his right to require written consent by failing to object misconstrues the statute.  Section 1101 confers a right to recover for impairment of an interest in the community estates.  Section 1100, subdivision (b) prohibits a spouse from making a gift without the other spouse's written consent.  Neither statute requires that husband veto gifting or somehow invoke the written consent requirement.  Rather, it seems clear from the statutes that it was wife's obligation to seek out and obtain husband's written consent.  Hence, while the right to recover may be waived though written consent, "the right to require written consent" is not waived by simply failing to object to the gifting.

For these reasons, we conclude reimbursement under section 1101 is required, and the trial court erred in holding otherwise.  We will remand for the trial court to award husband his share of the community property under section 1101.

---

[14]  Section 1100, subdivision (b) provides:  "A spouse may not make a gift of community personal property, or dispose of community personal property for less than fair and reasonable value, *without the written consent* of the other spouse.  This subdivision does not apply to gifts mutually given by both spouses to third parties and to gifts given by one spouse to the other spouse."  (Italics added.)

## IV. Attorney's Fees

Husband next contends the trial court abused its discretion in refusing to award more than the $10,000 in attorney fees he was awarded. We agree.

### A. Additional background

Before trial, the trial court awarded husband $5,000 in attorney's fees. Doing so, it found a "significant disparity in income and access to funds" and that husband could not pay for legal representation.

At closing arguments, husband requested $42,000 in additional attorney's fees. The trial court awarded $5,000. Doing so, it found "a small disparity in income," when husband was receiving "temporary spousal support pretrial and during trial." It also found, "the evidence establishes Husband does have access to other funds."[15]

The trial court went on to find that $5,000, coupled with the $5,000 previous ordered, was "an equitable apportionment of the overall cost of litigation." It rejected husband's argument that because each party had accrued a similar amount in attorney's fees, the requested fees were reasonable, reasoning: "This was a very short term marriage, the parties have little community assets and they lived together for an incredibly short period of time."

Several months later, husband moved for an additional award of $41,874.50 in fees, arising out of the costs of preparing a proposed statement of decision, responding to

---

[15] As part of its finding of community property and assets, the trial court found husband had bank accounts containing $334, $4,500, and $6,063. It also found husband held stock "in excess of (approximately) $100,000.00." The court rejected husband's assertion that the stock is encumbered by a debt owed by husband. The court allowed, however, that to the extent the stock was encumbered, the debt would remain husband's separate property obligation. In terms of earning ability, the court found husband did not have the legal ability to work in the U.S and found insufficient evidence to impute income to him. Wife's monthly income was found to be approximately $22,579.

wife's proposed statement, purchasing transcripts, and filing a controverted issues statement.

The trial court denied the request, explaining, in its written order, that husband has failed to present sufficient credible evidence to support his request. The court went on: "there continues to be insufficient admissible evidence and insufficient credible evidence of Husband's need, ability to pay, disparity in income and access to funds notwithstanding the undisputed fact he is not legally employed in the United States and cannot legally work in the United States." The court also noted husband's attached income and expense declaration was "not complete," although it did not say what was missing.

## B. The Parties' Contentions

On appeal, husband maintains the court erred in awarding a combined $10,000 in attorney's fees, against the over $108,000 in fees incurred. He takes issue with the trial court's finding of only a "small disparity in income," noting wife was then earning $22,500 per month, not including bonuses, while he was receiving $4,621 in temporary spousal support. He also notes "[a] spouse should not have to utilize support payments designed to pay living expenses to fund litigation in the dissolution proceeding." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1315–1316.)

Husband also challenges the finding that he has "access to other funds," which he presumes is a reference to his $100,000 in encumbered stocks. And to the extent the court impliedly found he could borrow from relatives, he argues this was not a valid basis to deny fees as it has been held error to presume a spouse will be able to obtain the necessary funds from a parent. (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 531.)

Wife responds that the amount of attorney's fees awarded was not an abuse of discretion, noting such awards are reviewed for clear showing of abuse. She argues the finding of a small disparity of income is supported by husband's bank and stock

23

accounts, worth roughly $100,000 — which the court impliedly found gave him the ability to pay. She also asserts that $10,000 in fees was reasonable given the dissolution proceeding was far from complex, the pre-trial discovery was routine, the trial lasted only four days, the issues were straightforward, and the marriage was brief, with few community assets to divide.

## C. Analysis

When attorney's fees are requested, section 2030 requires the trial court to make three findings: (1) whether such fees are "appropriate," (2) whether there exists a "disparity in access to funds to retain counsel," and (3) whether one party can pay for both sides. (§ 2030, subd. (a)(2).) If those findings demonstrate a disparity in access and ability to pay, the court must award attorney's fees and costs. (*Ibid*.)

Section 2032, in turn, requires the amount of fees awarded be "just and reasonable under the relative circumstances of the respective parties." In making that determination, the court is directed to consider "the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately . . . ." (§ 2032, subd. (b).) The court must also consider, if relevant, circumstances pertaining to spousal support determinations as listed in Section 4320.[16] (§ 2032, subd. (b).)

We review the award of attorney's fees under section 2030 for abuse of discretion. (*In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 532.) But "[w]hen considering an application for attorney's fees, the trial court must comply with the mandatory provisions of the statute because discretionary authority 'must be exercised within the confines of the applicable legal principles.' " (*In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1050 (*Morton*).)

---

[16] They include the parties' age and health, marketable skills, earnings, earning capacity, needs, assets, and obligations, as well as the marriage's duration. (§ 4320.)

Here, the trial court erred in its award of attorney's fees. The finding of a "small disparity of income" is not supported in the record. In the statement of decision, the trial court found wife's income to be $22,579 a month, while husband was found to not have the ability to work in the U.S. That stark difference cannot be characterized as "a small disparity in income."

To the extent the trial court relied on husband's then monthly receipt of $4,621 in temporary spousal support, it was error. "A support award is made to defray support expenses, and should not be considered in determining financial ability to maintain a proceeding." (*In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1220.)

Nor can the trial court's ruling rest on the finding that husband "does have access to other funds" without any express reference to such funds. A court's findings under section 2030 must be express. (*Morton, supra*, 27 Cal.App.5th at p. 1050 [findings must be explicit; they may not be implicit].) Hence, we cannot simply infer that the trial court was referring to the stock that husband claimed was encumbered.

Finally, the trial court's conclusion that the amount requested was unreasonable based on the nature of the marriage and the divorce proceedings is unsupported by the record. The trial court listed some 17 contested items addressed in its 48-page statement of decision.[17] And although the marriage was brief, the array of meritorious issues raised on appeal demonstrates these dissolution proceedings were far from simple. From

[17] The 17 issues submitted for determination were: "(1) status of dissolution; (2) date of separation; (3) Wife's request for reimbursement for child care; (4) child custody; (5) Husband's income for purposes of support; (6) Wife's income for purposes of support; (7) retroactive modification of child support; (8) ongoing child support; (9) community property assets and debts; (10) Wife's request for reimbursement of the October 2015 support payments; (11) long-term spousal support; (12) retroactive modification of temporary spousal support; (13) spousal and child support arrears; (14) Husband's request for reimbursement of Wife's education expenses; (15) breach of fiduciary duty; (16) attorney fees and costs; and (17) charging lien."

husband's immigration status, to various community reimbursement issues, to the fact that they had a child, and a disputed separation date, the nature of the proceeding was not such that the trial court could simply dismiss the bulk of husband's attorney's fee request as unreasonable fees.

We will remand for a redetermination of attorney's fees.

## V. The New Trial Motion

Husband contends the trial court abused its discretion in denying a new trial or relief following the issuance of *Kumar, supra*, 13 Cal.App.5th 1072. On this point, we agree with wife.

## A. Additional background

In his proposed statement of decision, husband wrote that "as a matter of federal law, a citizen (such as Wife) who sponsors an immigrant into the United States (Husband) has a legal obligation by signing immigrant sponsorship forms, to support that immigrant to a minimum of 125% of the federal poverty level." He continued, "this court clearly has jurisdiction to award that spouse child and/or spousal support regardless of that spouse's legal residence status."

In its statement of final decision, the trial court wrote: "[T]his court is not charged with determining whether Wife has an obligation of support under Federal Immigration law as Husband argues. This court must follow California statutory and case law with respect to long-term spousal support. Husband cites no persuasive California law that appears to be precedent for his assertion. Moreover, Husband's argument the court is legally prohibited from terminating long-term support not only fails for a lack of sufficient credible evidence, it is not supported by precedent."

Two months after the statement of decision was filed, *Kumar* was published. It held that "an immigrant spouse has standing to enforce the support obligation created by an I–864 affidavit of support in state court." (*Kumar, supra,* 13 Cal.App.5th at p. 1075.) The *Kumar* decision explained that by signing a Form I–864, a sponsor agrees to support

26

the sponsored spouse at an income no less than 125 percent of the Federal poverty line for as long as the affidavit is enforceable. (8 U.S.C. § 1183a(1)(A); *Kumar,* at p. 1079.) Divorce does not relieve the sponsor's obligations. (*Ibid*.) The affidavit further states, " 'If you do not provide sufficient support to the person who becomes a lawful permanent resident based on the Form I–864 that you signed, that person may sue you for this support.' " (*Id*. at p. 1075.) "The purpose of an I–864 affidavit is 'to ensure that an immigrant does not become a public charge.' " (*Ibid*.)

In *Kumar*, the immigrant spouse married her husband, a U.S. citizen, and the husband filed an I-864 affidavit of support in connection with the wife's visa application. (*Kumar, supra*, 13 Cal.App.5th at p. 1075.) During dissolution proceedings, wife raised the I-864 affidavit, maintaining that husband had agreed to support her. (*Id*. at p. 1077.) The trial court responded that it would enforce the I–864 affidavit if the government sought enforcement and told the wife to "[f]ile a federal case." (*Id*. at p. 1078) On appeal, the appellate court reversed, rejecting husband's claim that the I-864 affidavit is not enforceable in state court. (*Id*. at p. 1081)

Here, following *Kumar's* publication, husband, acting in pro per, moved for a new trial on multiple grounds, including the issuance of *Kumar*. He attached a copy of the I-864 form to his motion.

The trial court denied the motion. It wrote that it was not persuaded that the *Kumar* case warranted retrial. It reasoned that a new trial might have been warranted had the court prevented husband from offering evidence on or arguing the I-864 contractual support issue. But, it explained: "Husband did not notice a specific contract claim in a request for order in the dissolution proceeding, he did not include a contract claim in his amended statement of issues and contentions, he did not include a contract claim in any pre-trial brief or points and authorities filed and he did not include a contract claim in his opening statement prior to the presentation of evidence." And husband "never sought to

27

introduce the I-864 form as an exhibit" and introduced no evidence related to a contract claim.

## B. Analysis

On appeal, husband argues he had raised the issue, citing the trial court's response in the final decision. He adds, the issuance of the *Kumar* case "is precisely the sort of legal basis on which a new trial is warranted." Wife responds that the issue was only belatedly addressed in husband's proposed statement of decision and no evidence was raised regarding support or I-864 at trial or in the pretrial filings. We agree with wife.

"A trial court's broad discretion in ruling on a motion for new trial is accorded great deference on appeal." (*Plancarte v. Guardsmark* (2004) 118 Cal.App.4th 640, 645.) Its determination "will not be disturbed on appeal absent a showing of a manifest and unmistakable abuse of discretion." (*Wood v. Jamison* (2008) 167 Cal.App.4th 156, 162.)

Husband did not raise the issue of I-864 or assert any contract claim in his pretrial statement of issues or at any point during trial. The issue was only belatedly raised after the trial court requested the parties prepare proposed statements of decision. This was too late. Under these circumstances, the trial court acted within its discretion in denying a new trial.

Husband responds, however, that "this argument was not even an option at the time of trial," implying (we assume) that before *Kumar*, he did not know he could make a claim based on his I-864 affidavit. We cannot agree.

The fact that defendant asserted in his proposed statement of decision — prior to *Kumar's* publication — that "this court clearly has jurisdiction to award" spousal support based on an immigrant sponsorship forms, belies any claim that he did not know such claims were possible before *Kumar*. Indeed, as the *Kumar* court indicated, it was not

writing on a blank slate. It cited three out-of-state cases[18] where the state court exercised jurisdiction over an immigrant spouse's I-864 claim. (*Kumar, supra*, 13 Cal.App.5th at p. 1081.)

The trial court acted within its discretion in denying the new trial motion.

## VI. The Trial Court's Finding on Account 213

Finally, husband challenges the trial court's finding that a bank account of his was community property. He maintains that finding is not supported by substantial evidence. We agree.

### A. Additional Background

At trial, husband testified about a bank account in his name ending in 213. A bank statement of that account was also admitted as an exhibit.

Husband testified that dividends from his stock, which he owned before marriage, would be deposited in the 213 account. The account also included cash that he had deposited into the account, as well as deposits from his sister. As to the origin of the cash, husband testified: "I think it could be like what my dad gave me." He later added, "Maybe he owed me money," and "I did owe him money from a couple of years back." Husband testified that none of his income while working in India went into the account.

In its statement of decision, the trial court found as to account 213, "[t]he evidence establishes the community property value is $4,500.00." It did not reference the evidence upon which it based this finding. It confirmed the account as husband's sole and separate property and ordered it divided.

### B. Analysis

On appeal, husband argues the trial court's finding is not supported by substantial evidence, reasoning his trial testimony regarding the account was uncontested. Wife

---

[18] *Barnett v. Barnett* (Alaska 2010) 238 P.3d 594, *Love v. Love* (Pa. Super. Ct. 2011) 33 A.3d 1268, and *Iannuzzelli v. Lovett* (Fla.Dist.Ct.App. 2008) 981 So.2d 557.

responds that the trial court repeatedly found husband not credible, and thus the court could have reasonably rejected husband's testimony regarding the 213 account. We agree with husband.

A trial court's findings on the characterization and valuation of assets are factual determinations reviewed for substantial evidence. (*In re Marriage of Campi* (2013) 212 Cal.App.4th 1565, 1572.)

Assuming wife is correct that the trial court rejected husband's testimony regarding the 213 account, the record is still devoid of evidence to support the trial court's finding that it contained community property. The record contains a statement from that account, listing numerous deposits and withdrawals dating from January 2011 to September 2016. But the truncated descriptions for each transaction give no indication of whether the source was community or separate property. And wife can point to nothing else in the record that might support the trial court's finding. Accordingly, we cannot conclude substantial evidence supports the trial court's finding. (See *Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1205 [rejection of witness's testimony has only the effect of removing the testimony from the evidentiary mix, it is not affirmative evidence of a contrary conclusion].)

We will therefore reverse the trial court's finding as to account 213 and remand for redistribution.

## DISPOSITION

The judgment is reversed, and the finding that husband's bank account ending in 213 is community property is vacated. The matter is remanded with directions to (1) order wife to reimburse the community for community funds spent during the marriage on wife's institutional and family-sourced education loans, (2) order wife to reimburse the community for community funds spent to repay noneducation loans during the marriage, (3) award husband his share of the community property, under section 1101, (4) redetermine the award of attorney's fees for husband, and (5) reallocate community

30

assets consistent with this opinion.  Husband shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)



_____/s/_____
MURRAY, J.



We concur:



_____/s/_____
BUTZ, Acting P. J.



_____/s/_____
RENNER, J.